# EXHIBIT 1

ELECTRONICALLY FILED
2026 May 05 10:38 AM
CLERK OF COURT - CHANCERY

| STATE OF TENNESSEE<br>30th JUDICIAL DISTRICT<br>CHANCERY COURT | **SUMMONS**** | DOCKET NUMBER<br>CH-____________ |
|---|---|---|
| Plaintiff<br>Patti DelVille | Defendant<br>TruGreen Limited Partnership d/b/a TruGreen | |

TO: (NAME AND ADDRESS OF DEFENDANT)

TruGreen Limited Partnership
SERVE: Registered Agent
CT Corporation System
300 Montvue Road
Knoxville, TN 37919

Method of Service:

- ☐ Shelby County Sheriff
- ☐ Private Process Server
- ☐ Out of County Sheriff*
- ☐ Secretary of State*
- ☐ Comm. Of Insurance*
- ☑ Certified Mail
- ☐ Other

*Attach Required Fees

You are summoned to defend a civil action filed against you in the Chancery Court of Shelby County, Tennessee. Your defense to this action must be made within thirty (30) days from the date this summons is served upon you. You must file your defense with the Clerk of the Court and send a copy to the Plaintiff/Plaintiff's attorney at the address listed below. If you fail to defend this action within thirty (30) days of service, judgment by default may be rendered against you for the relief sought in the complaint. Questions regarding this summons and the attached documents should be addressed to the Attorney/Plaintiff listed below.

Attorney for Plaintiff or Plaintiff if filing Pro Se:
(Name, address & telephone number)

Grayson Wells
STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks, Ave., Ste 200
Nashville, TN 37203 Tel: (615) 254-8801

ISSUED_________of__________________, 20______

W. Aaron Hall, Clerk and Master

By: ______________________________
Deputy Clerk & Master

140 Adams, Room 308 Memphis, TN 38103

TO THE SHERIFF:

____________________________

____________________________

Came to hand

______day of______________________, 20 ______

Sheriff

**CERTIFICATION (IF APPLICABLE)**

I, W. Aaron Hall, Clerk & Master of the Chancery Court in the State of Tennessee, Shelby County, do certify this to be a true and correct copy of the original summons issued in this case.

**W. Aaron Hall, Clerk & Master**

By: ______________________________
D. C. & M.

**Submit one original and one copy for each defendant to be served.

For Americans with Disabilities Act (ADA) assistance **only**, please call Shelby County ADA Coordinator at (901) 222-2334.
For questions regarding scheduling or filing, please contact Chancery Court at (901) 222-3900.

**Notice of Personal Property Exemption:**

TO THE DEFENDANT(S):

Tennessee law provides a ten thousand dollar ($10,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state docket number on list.

## RETURN OF SERVICE OF SUMMONS

I hereby certify that I **HAVE** served the within summons:

By delivering on the__________day of_______________________________, 20______at___________________am/pm a copy of the summons and a copy of the Complaint to the following Defendant ______________________________________________________

at ____________________________________________________________________________________

____________________________________________ By: __________________________________________

Signature of person accepting service — Sheriff or other authorized person to serve process

## RETURN OF NON-SERVICE OF SUMMONS

I hereby certify that I **HAVE NOT** served the within summons:

To the named defendant__________________________________________because ______________________________________

is (are) not to be found in this county after diligent search and inquiry for the following reason(s):________________________________.

This______day of_______________________, 20 ________

By: Sheriff or other authorized person to serve process

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the________day of________________, 20______, I sent, postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case CH-___________________to the defendant__________________________________. On the________day of____________________________________, 20_______, I received the return receipt, which had been signed by__________________________________on the______ day of ______________, 20________. The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

**Sworn to and subscribed before me on this_______day of**

**__________________________, 20_______ .**

Signature of____Notary Public or_____ Deputy Court Clerk:

__________________________________________________

My Commission Expires:

Signature of Plaintiff, Plaintiff's attorney or other person authorized by statute to serve process.

____________________________________________________

ATTACH RETURN

RECEIPT HERE

(IF APPLICABLE)

**The Shelby County, Tennessee Chancery Court**

**Case Style:** PATTI DELVALLE V TRUGREEN LIMITED PARTNERSHIP

**Case Number:** CH-26-0641

**Type:** Process issued other (T)

SAMUEL GINSBERG, DC

Electronically signed on 05/05/2026 10:49:22 AM

ELECTRONICALLY FILED
2026 May 05 10:38 AM
CLERK OF COURT - CHANCERY

**IN THE CHANCERY COURT OF SHELBY COUNTY, TENNESSEE**
**THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

| | | |
|---|---|---|
| PATTI DELVALLE, individually, and on behalf all others similarly situated, | ) | |
| Plaintiff, | ) | Case No. |
| v. | ) | CLASS ACTION COMPLAINT FOR DAMAGES |
| TRUGREEN LIMITED PARTNERSHIP d/b/a TRUGREEN, | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

**CLASS ACTION COMPLAINT**

Plaintiff, Patti DelValle, individually and on behalf of the Class defined below of similarly situated persons, alleges the following against TruGreen LP d/b/a TruGreen ("TruGreen" or "Defendant") based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation by Plaintiff's counsel and review of public documents as to all other matters:

## I. INTRODUCTION

1. Plaintiff brings this class action against TruGreen for its failure to properly secure and safeguard Plaintiff's and other similarly situated current and former job applicants and employees' ("Class Members") personally identifiable information ("PII") from hackers. Specifically, a cybersecurity researcher discovered a publicly exposed 104 gigabyte database that contained employee records belonging to TruGreen.

2. TruGreen, based in Memphis, Tennessee, is a lawncare company that serves more commercial and residential customers nationwide.[1]

[1] *Frequently Asked Questions*, TRUGREEN, https://www.trugreen.com/lawn-care-101/faqs (last visited May 1, 2026).

3. Most, if not all "Class Members" (defined below) have no idea that their Private Information had been compromised, and that they are, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

4. Armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

5. There has been no assurance offered by TruGreen that all personal data or copies of data have been recovered or destroyed, or that Defendant has adequately enhanced its data security practices sufficient to avoid a similar breach of its network in the future.

6. Plaintiff's and Class Members' identities are now and forever will be at risk because of Defendant's grossly negligent conduct, as the Private Information that Defendant collected and maintained is now in the hands of data thieves and other unauthorized third parties.

7. Therefore, Plaintiff and Class Members have suffered and are at an imminent, immediate, and continuing increased risk of suffering ascertainable losses in the form of harm from identity theft and other fraudulent misuse of their Private Information, the loss of the benefit of their bargain, out-of-pocket expenses incurred to remedy or mitigate the effects of the Data Breach, and the value of their time they will reasonably incur to remedy or mitigate the future effects of the Data Breach.

8. Plaintiff brings this class action lawsuit to address TruGreen's gross negligence regarding inadequate safeguarding of Class Members' Private Information that it collected and maintained, and its failure to provide timely and adequate notice to Plaintiff and Class Members of the types of information that were accessed, and that such information was subject to unauthorized access by cybercriminals.

9. The potential for improper disclosure and theft of Plaintiff's and Class Members' Private Information was a known risk to TruGreen, and thus TruGreen was on notice that failing to take necessary steps to secure the Private Information left it vulnerable to an attack.

10. Upon information and belief, TruGreen and its employees were grossly negligent in that they failed to properly implement security practices with regard to the computer network and systems that housed the Private Information.

11. Plaintiff seeks to remedy these harms on behalf of herself and all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach.

## II. PARTIES

12. Plaintiff Patti DelValle is an individual citizen of the State of Michigan.

13. Defendant TruGreen is a Limited Partnership organized in Delaware with its principal place of business located at 1790 Kirby Parkway, Suite 300, Memphis, TN 38138. Defendant's registered agent, CT Corporation System, can be found at 300 Montvue Rd, Knoxville, TN 37919.

## III. JURISDICTION AND VENUE

14. This Court has general jurisdiction over this action under T.C.A. § 16-11-101.

15. This Court has personal jurisdiction over TruGreen because TruGreen is resides, operates, and conducts business in Shelby County and the conduct at-issue occurred in Shelby County.

16. Venue is proper in this Court pursuant to T.C.A. § 20-4-101 because Defendant resides and is found in this county, a substantial part of the events giving rise to this action occurred in Shelby County—including Defendant's alleged actions, omissions, and business decisions resulting in the Data Breach—and Defendant has harmed Class Members residing in Shelby County.

## IV. FACTUAL ALLEGATIONS

### *A. TruGreen's Business and Collection of Plaintiff's and Class Members' Private Information*

17. Founded in 1991, TruGreen is lawn care company that provides lawn maintenance, fertilization, tree and shrub care, pest control, and related services, serving residential and commercial customers nationwide, as well as the official lawn care treatment provider of the PGA Tour. TruGreen employs more than 15,000 people and has approximately $2.9 billion in annual revenue.[2]

18. As a condition of employment with TruGreen, Defendant requires that its employees entrust it with highly sensitive personal information. In the ordinary course of employment with TruGreen, Plaintiff and Class Members were required to provide their Private Information to Defendant.

---

[2] *About Us*, TRUGREEN, https://www.trugreen.com/newsroom/executive-staff#about (last visited May 1, 2026); *see Ransomware Group Incransom Hits: trugreen.com*, HOOKPHISH (Apr. 23, 2026), https://www.hookphish.com/blog/ransomware-group-incransom-hits-trugreen-com/.

19. Because of the highly sensitive and personal nature of the information TruGreen acquires and stores with respect to its employees, TruGreen, upon information and belief, promises to, among other things: keep employees' Private Information private; comply with industry standards related to data security and the maintenance of its employees' Private Information; inform its employees of its legal duties relating to data security and comply with all federal and state laws protecting employees' Private Information; only use and release employees' Private Information for reasons that relate to the services it provides; not store former employees' Private Information for longer than is necessary to carry out its business operations; and provide adequate notice to its current and former employees if their Private Information is disclosed without authorization.

20. By obtaining, collecting, using, and deriving a benefit from its employees' Private Information, TruGreen assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure and exfiltration.

21. Plaintiff and Class Members relied on TruGreen to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this Information, which Defendant ultimately failed to do.

### *B. The Data Breach and Defendant's Failure to Notify Plaintiff and Class Members*

22. Upon information and belief, and according to online sources, Defendant experienced unauthorized access to its computer systems on or around April 22, 2026.[3]

---

[3] *See supra* note 2, HOOKPHISH; *Trugreen.com*, RANSOMWARE, https://www.ransomware.live/id/dHJ1Z3JlZW4uY29tQGJsYWNrYmFzdGE (last visited May 1, 2026).

23. Through the Data Breach, the unauthorized cybercriminal(s) accessed a cache of highly sensitive Private Information, including revenue and employee details, totaling about 104 gigabytes.

24. Plaintiff and Class Members have been denied access to crucial details like the root cause of the Data Breach, the vulnerabilities exploited, the unauthorized actor responsible for the Data Breach, and the remedial measures undertaken to ensure such a breach does not occur again. To date, these critical facts have not been explained or clarified to Plaintiff and Class Members, who retain a vested interest in ensuring that their Private Information is protected.

25. TruGreen had obligations created by contract, industry standards, and common law to keep Plaintiff's and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

26. Plaintiff and Class Members provided their Private Information to TruGreen with the reasonable expectation and mutual understanding that TruGreen would comply with its obligations to keep such Information confidential and secure from unauthorized access and to provide timely notice of any security breaches.

27. TruGreen's data security obligations were particularly important given the substantial increase in cyberattacks in recent years.

28. TruGreen knew or should have known that its electronic records would be targeted by cybercriminals.

### *C. TruGreen Knew or Should Have Known of the Risk of a Cyber Attack Because Businesses in Possession of Private Information are Particularly Suspectable.*

29. TruGreen's negligence, including its gross negligence, in failing to safeguard Plaintiff's and Class Members' Private Information is particularly stark, considering the highly public increase of cybercrime, like the hacking incident that resulted in the Data Breach.

30. Data thieves regularly target entities that store PII like TruGreen due to the highly sensitive information they maintain. TruGreen knew and understood that Plaintiff's and Class Members' Private Information is valuable and highly sought after by criminal parties who seek to illegally monetize it through unauthorized access.

31. According to the Identity Theft Resource Center's 2023 Data Breach Report, the overall number of publicly reported data compromises in 2023 increased more than 72-percent over the previous high-water mark and 78-percent over 2022, impacting an estimated 353,027,892 individuals."[4]

32. Despite the prevalence of public announcements of data breach and data security compromises, TruGreen failed to take appropriate steps to protect Plaintiff's and Class Members' Private Information from being compromised in this Data Breach.

33. As a national service provider in possession of thousands of employees' Private Information, TruGreen knew, or should have known, the importance of safeguarding the Private Information entrusted to it by Plaintiff and Class Members and of the foreseeable consequences they would suffer if TruGreen's data security systems were breached. Such consequences include the significant costs imposed on Plaintiff and Class Members due to the unauthorized exposure of their Private Information to criminal actors. Nevertheless, TruGreen failed to take adequate cybersecurity measures to prevent the Data Breach or the foreseeable injuries it caused.

34. Given the nature of the Data Breach, it was foreseeable that Plaintiff's and Class Members' Private Information compromised therein would be targeted by hackers and cybercriminals, for use in variety of different injurious ways. Indeed, the cybercriminals who

---

[4] *2023 Annual Data Breach Report*, IDENTITY THEFT RESOURCE CENTER, (Jan. 2024), *available online at*: https://www.idtheftcenter.org/wp-content/uploads/2024/01/ITRC_2023-Annual-Data-Breach-Report.pdf (last visited on May 1, 2026).

possess Plaintiff's and Class Members' Private Information can easily obtain their tax returns or open fraudulent credit card accounts in Plaintiff's and Class Members' names.

35. TruGreen was, or should have been, fully aware of the unique type and the significant volume of data on TruGreen's network server(s) and systems, amounting to millions of individuals' detailed Private Information, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

36. Plaintiff and Class Members were the foreseeable and probable victims of TruGreen's inadequate security practices and procedures. TruGreen knew or should have known of the inherent risks in collecting and storing Private Information and the critical importance of providing adequate security for that data, particularly due to the highly public trend of data breach incidents in recent years.

### *D. TruGreen Failed to Comply with FTC Guidelines*

37. The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

38. In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses.[5]

[5] *Protecting Personal Information: A Guide for Business,* FEDERAL TRADE COMMISSION (October 2016), *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited on May 1, 2026).

The guidelines note that businesses should protect the personal information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

39. The FTC further recommends that companies not maintain personally identifiable information ("PII") longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

40. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect Personal Information by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45 *et seq*. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

41. Such FTC enforcement actions include those against businesses that fail to adequately protect Personal Information, like TruGreen here. *See, e.g.*, *In the Matter of LabMD, Inc*., 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

42. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses like TruGreen of failing to use reasonable measures to protect Private Information they collect and maintain from consumers. The FTC publications and orders described above also form part of the basis of TruGreen's duty in this regard.

43. The FTC has also recognized that personal data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis and profit."[6]

44. As evidenced by the Data Breach, TruGreen failed to properly implement basic data security practices. TruGreen's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

45. TruGreen was at all times fully aware of its obligation to protect the Private Information of its employees yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so. Defendant's indifference to the consequences of its inaction in the face of the known threat to the data it was obligated to protect leads to a reasonable conclusion that Defendant's negligence was beyond ordinary, and in fact Defendant should be liable for gross negligence.

[6] FTC Commissioner Pamela Jones Harbour, *Remarks Before FTC Exploring Privacy Roundtable* (Dec. 7, 2009), *transcript available at* https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf (last visited on May 1, 2026).

### *E. TruGreen Failed to Comply with Industry Standards*

46. As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

47. The Center for Internet Security's (CIS) Critical Security Controls (CSC) recommends certain best practices to adequately secure data and prevent cybersecurity attacks, including Critical Security Controls of Inventory and Control of Enterprise Assets, Inventory and Control of Software Assets, Data Protection, Secure Configuration of Enterprise Assets and Software, Account Management, Access Control Management, Continuous Vulnerability Management, Audit Log Management, Email and Web Browser Protections, Malware Defenses, Data Recovery, Network Infrastructure Management, Network Monitoring and Defense, Security Awareness and Skills Training, Service Provider Management, Application Software Security, Incident Response Management, and Penetration Testing.[7]

48. The National Institute of Standards and Technology ("NIST") also recommends certain practices to safeguard systems, such as the following:

a. Control who logs on to your network and uses your computers and other devices.

b. Use security software to protect data.

c. Encrypt sensitive data, at rest and in transit.

d. Conduct regular backups of data.

e. Update security software regularly, automating those updates if possible.

---

[7] *The 18 CIS Critical Security Controls*, CENTER FOR INTERNET SECURITY, https://www.cisecurity.org/controls/cis-controls-list (last visited on May 1, 2026).

f. Have formal policies for safely disposing of electronic files and old devices.

g. Train everyone who uses your computers, devices, and network about cybersecurity. You can help employees understand their personal risk in addition to their crucial role in the workplace.

49. Further still, the United States Cybersecurity and Infrastructure Security Agency ("CISA") makes specific recommendations to organizations to guard against cybersecurity attacks, including (a) reducing the likelihood of a damaging cyber intrusion by validating that "remote access to the organization's network and privileged or administrative access requires multi-factor authentication, [e]nsur[ing] that software is up to date, prioritizing updates that address known exploited vulnerabilities identified by CISA[,] [c]onfirm[ing] that the organization's IT personnel have disabled all ports and protocols that are not essential for business purposes," and other steps; (b) taking steps to quickly detect a potential intrusion, including "[e]nsur[ing] that cybersecurity/IT personnel are focused on identifying and quickly assessing any unexpected or unusual network behavior [and] [e]nabl[ing] logging in order to better investigate issues or events[;] [c]onfirm[ing] that the organization's entire network is protected by antivirus/antimalware software and that signatures in these tools are updated," and (c) "[e]nsur[ing] that the organization is prepared to respond if an intrusion occurs," and other steps.[8]

50. Upon information and belief, Defendant breached its obligations to Class Members and/or was otherwise grossly negligent when it failed to implement industry-standard cybersecurity measures, including by failing to meet the minimum standards of both the NIST Cybersecurity

---

[8] *Shields Up: Guidance for Organizations*, CYBERSECURITY AND INFRASTRUCTURE SECURITY AGENCY, https://www.cisa.gov/shields-guidance-organizations (last visited May 1, 2026).

Framework Version 2.0 (including PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established frameworks for reasonable cybersecurity readiness, and by failing to comply with other industry standards for protecting Plaintiff's and Class Members' Private Information, resulting in the Data Breach.

### *F. TruGreen Breached its Duty to Safeguard Plaintiff's and Class Members' Private Information*

51. In addition to its obligations under federal and state laws, TruGreen owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. TruGreen owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Private Information of its current and former employees.

52. Upon information and belief, TruGreen breached its obligations to Plaintiff and Class Members and/or was otherwise grossly negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. TruGreen's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a. Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

b. Failing to adequately protect current and former employees' Private Information;

c. Failing to properly monitor its own data security systems for existing intrusions;

d. Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

e. Failing to adhere to industry standards for cybersecurity as discussed above; and

f. Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' Private Information.

53. Upon information and belief, TruGreen grossly negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted Private Information and exfiltrate such Private Information.

54. Had TruGreen remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential Private Information.

55. Accordingly, Plaintiff's and Class Members' lives were severely disrupted. What's more, they have been harmed as a result of the Data Breach and now face an increased risk of future harm that includes, but is not limited to, fraud and identity theft.

### *G. As a result of the Data Breach, Plaintiff's and Class Members Are at a Significantly Increased Risk of Fraud and Identity Theft.*

56. The FTC hosted a workshop to discuss "informational injuries," which are injuries that current and former employees like Plaintiff and Class Members suffer from privacy and security incidents such as data breaches or unauthorized disclosure of data.[9] Exposure of highly

---

[9] *FTC Information Injury Workshop, BE and BCP Staff Perspective,* FEDERAL TRADE COMMISSION, (October 2018), https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf.

sensitive personal information that individuals to keep private may cause harm to them, such as the ability to obtain or keep employment. Individuals' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

57. Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

58. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

59. In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect." Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts.

60. Thus, even if certain information was not purportedly involved in the Data Breach, the unauthorized parties could use Plaintiff's and Class Members' Private Information to access accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiff and Class Members.

61. One such example of how malicious actors may compile Private Information is through the development of "Fullz" packages.

62. Cybercriminals can cross-reference two sources of the Private Information compromised in the Data Breach to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

63. The development of "Fullz" packages means that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' phone numbers, email addresses, and other sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card or financial account numbers may not be included in the Private Information stolen in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and other Class Members' stolen Private Information is being misused, and that such misuse is fairly traceable to the Data Breach.

64. For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an

extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[10] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts. PII is data that can be used to detect a specific individual. PII is a valuable property right. Its value is axiomatic, considering the value of big ***data*** in corporate America and the consequences of cyber thefts (which include heavy prison sentences). Even this obvious risk-to-reward analysis illustrates beyond doubt that PII has considerable market value.

65. The U.S. Attorney General stated in 2020 that consumers' sensitive personal information commonly stolen in data breaches "has economic value."[11] The increase in cyberattacks, and attendant risk of future attacks, was widely known and completely foreseeable to the public and to anyone in Defendant's industry.

66. The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, PII can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[12] Experian reports that a stolen credit or debit card number can

---

[10] *See IdentityTheft.gov,* FEDERAL TRADE COMMISSION, https://www.identitytheft.gov/Steps (last visited on May 1, 2026).

[11] *See Attorney General William P. Barr Announces Indictment of Four Members of China's Military for Hacking into Equifax*, U.S. DEP'T OF JUSTICE (Feb. 10, 2020), https://www.justice.gov/opa/speech/attorney-general-william-p-barr-announces-indictment-four-members-china-s-military (last visited on May 1, 2026).

[12] *Your personal data is for sale on the dark web. Here's how much it costs,* DIGITAL TRENDS (Oct. 16, 2019), *available at* https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs (last visited on May 1, 2026).

sell for $5 to $110 on the dark web and that the "*fullz*" (a term criminals who steal credit card information use to refer to a complete set of information on a fraud victim) sold for $30 in 2017.[13]

67. Furthermore, even information such as names, email addresses and phone numbers, can have value to a hacker. Beyond things like spamming affected individuals, or launching phishing attacks using their names and emails, hackers, *inter alia*, can combine this information with other hacked data to build a more complete picture of an individual. It is often this type of piecing together of a puzzle that allows hackers to successfully carry out phishing attacks or social engineering attacks. This is reflected in recent reports, which warn that "[e]mail addresses are extremely valuable to threat actors who use them as part of their threat campaigns to compromise accounts and send phishing emails."[14]

68. The Dark Web Price Index of 2023, published by PrivacyAffairs[15] shows how valuable just email addresses alone can be, even when not associated with a financial account:

| **Email Database Dumps** | **Avg. Price USD (2022)** |
|---|---|
| 10,000,000 USA email addresses | $120 |
| 600,000 New Zealand email addresses | $110 |
| 2,400,000 million Canada email addresses | $100 |

69. Beyond using email addresses for hacking, the sale of a batch of illegally obtained email addresses can lead to increased spam emails. If an email address is swamped with spam, that address may become cumbersome or impossible to use, making it less valuable to its owner.

[13] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, EXPERIAN (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web (last visited on May 1, 2026).
[14] *See Dark Web Price Index: The Cost of Email Data,* MAGICSPAM, https://www.magicspam.com/blog/dark-web-price-index-the-cost-of-email-data/ (last visited on May 1, 2026).
[15] *See Dark Web Price Index 2023*, PRIVACY AFFAIRS, https://www.privacyaffairs.com/dark-web-price-index-2023/ (last visited on May 1, 2026).

70. Likewise, the value of PII is increasingly evident in our digital economy. Many companies, including TruGreen, collect PII for purposes of data analytics and marketing. These companies collect PII to better target customers, and share it with third parties for similar purposes.[16]

71. One author has noted: "Due, in part, to the use of PII in marketing decisions, commentators are conceptualizing PII as a commodity. Individual data points have concrete value, which can be traded on what is becoming a burgeoning market for PII."[17]

72. Consumers also recognize the value of their personal information and offer it in exchange for goods and services. The value of PII can be derived not only by a price at which consumers or hackers actually seek to sell it, but rather by the economic benefit consumers derive from being able to use it and control the use of it.

73. A consumer's ability to use their PII is encumbered when their identity or credit profile is infected by misuse or fraud. For example, a consumer with false or conflicting information on their credit report may be denied credit. Also, a consumer may be unable to open an electronic account where their email address is already associated with another user. In this sense, among others, the theft of PII in the Data Breach led to a diminution in value of the PII.

74. Data breaches, like that at issue here, damage consumers by interfering with their fiscal autonomy. Any past and potential future misuse of Plaintiff's PII impairs her ability to participate in the economic marketplace.

---

[16] *See Privacy Policy*, ROBINHOOD, https://robinhood.com/us/en/support/articles/privacy-policy/ (last visited on May 1, 2026).

[17] *See* John T. Soma, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ('PII') Equals the "Value" of Financial Assets,* 15 Rich. J. L. & Tech. 11, 14 (2009).

75. The Identity Theft Resource Center documents the multitude of harms caused by fraudulent use of PII in its 2023 Consumer Impact Report.[18] After interviewing over 14,000 identity crime victims, researchers found that as a result of the criminal misuse of their PII:

- 77-percent experienced financial-related problems;
- 29-percent experienced financial losses exceeding $10,000;
- 40-percent were unable to pay bills;
- 28-percent were turned down for credit or loans;
- 37-percent became indebted;
- 87-percent experienced feelings of anxiety;
- 67-percent experienced difficulty sleeping; and
- 51-percent suffered from panic of anxiety attacks.[19]

76. It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and also between when PII and/or personal financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[20]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

77. PII is a valuable commodity to identity thieves because once the information has been compromised, criminals often trade the information on the "cyber black market" for years.

---

[18] *2023 Consumer Impact Report* (Jan. 2024), IDENTITY THEFT RESOURCE CENTER, https://www.idtheftcenter.org/wp-content/uploads/2023/08/ITRC_2023-Consumer-Impact-Report_Final-1.pdf.

[19] *Id* at pp 21-25.

[20] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, U.S. GOVERNMENT ACCOUNTABILITY OFFICE (June 2007), https://www.gao.gov/assets/gao-07-737.pdf.

78. As a result, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future and have no choice but to vigilantly monitor their accounts in the future and purchase credit monitoring and identity theft protection for many years to come.

***H. Plaintiff's and Class Members' Experience and Resulting Damages***

*Plaintiff Patti DelValle's Experience*

79. Plaintiff DelValle is a former employee of Defendant. As a condition of employment with Defendant, Plaintiff DelValle was required to give her Private Information to Defendant.

80. Upon information and belief, Plaintiff DelValle's Private Information was subject to Defendant's Data Breach.

81. Plaintiff DelValle would not have provided her Private Information to Defendant had Defendant timely disclosed that its systems lacked adequate computer and data security practices to safeguard its employees' personal information from theft, and that those systems were subject to a data breach.

82. Plaintiff DelValle suffered actual injury in the form of having her Private Information compromised and/or stolen as a result of the Data Breach.

83. Plaintiff DelValle suffered actual injury in the form of damages to and diminution in the value of her personal information – a form of intangible property that Plaintiff DelValle entrusted to Defendant for the purpose of receiving employment from Defendant and which was compromised in, and as a result of, the Data Breach.

84. Plaintiff DelValle suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse posed by her Private Information being placed in the hands of criminals.

85. Plaintiff DelValle has a continuing interest in ensuring that her Private Information, which remains in the possession of Defendant, is protected and safeguarded from future breaches. This interest is particularly acute, as Defendant's systems have already been shown to be susceptible to compromise and are subject to further attack so long as TruGreen fails to undertake the necessary and appropriate security and training measures to protect its employees' Private Information.

86. As a result of the Data Breach, Plaintiff DelValle has suffered anxiety as a result of the release of her Private Information to cybercriminals, which Private Information she believed would be protected from unauthorized access and disclosure. These feelings include anxiety about unauthorized parties viewing, selling, and/or using her Private Information for purposes of committing cyber and other crimes against her. Plaintiff DelValle is very concerned about this increased, substantial, and continuing risk, as well as the consequences that identity theft and fraud resulting from the Data Breach will have on her life.

87. Plaintiff DelValle also suffered actual injury as a result of the Data Breach in the form of (a) damage to and diminution in the value of her Private Information, which upon information and belief, was subject to Defendant's Data Breach (b) violation of her privacy rights; and (c) present, imminent, and impending injury arising from the increased risk of identity theft, and fraud she now faces.

88. As a result of the Data Breach, Plaintiff DelValle anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the many harms caused by the Data Breach.

89. As a direct and proximate result of TruGreen's actions and omissions, Plaintiff and Class Members are at an imminent, immediate, and continuing increased risk of experiencing

devastating instances of identity theft, including but not limited to, having loans opened in their names, tax returns filed in their names, utility bills opened in their names, credit card accounts opened in their names, unauthorized charges made on their financial accounts, and other forms of identity theft.

90. Plaintiff and Class Members also face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Private Information, since potential fraudsters will likely use such Private Information to continue to carry out such targeted schemes against Plaintiff and Class Members.

91. The Private Information maintained by and stolen from Defendant's systems, combined with publicly available information, allows nefarious actors to assemble a detailed mosaic of Plaintiff and Class Members, which has been and will continue to be used to carry out targeted fraudulent schemes against Plaintiff and Class Members.

92. Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

93. Upon information and belief, Plaintiff and Class Members also suffered a loss of value of their PII and PHI when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases. An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry

was worth roughly $200 billion.[21] In fact, consumers who agree to provide their web browsing history to the Nielsen Corporation can in turn receive up to $50 a year.[22]

94. Upon information and belief, as a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has an inherent market value in both legitimate and illegal markets, has been harmed and diminished due to its acquisition by cybercriminals. This transfer of valuable information happened with no consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is apparently readily available to others, and the rarity of the Private Information has been destroyed because it is no longer only held by Plaintiff and the Class Members, and because that data no longer necessarily correlates only with activities undertaken by Plaintiff and the Class Members, thereby causing additional loss of value.

95. Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to still be in the possession of TruGreen, is protected from future additional breaches by the implementation of more adequate data security measures and safeguards, including but not limited to, ensuring that the storage of data or documents containing personal and financial information is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

96. As a direct and proximate result of TruGreen's actions and inactions, Plaintiff and Class Members have suffered a loss of privacy and have suffered cognizable harm, including an imminent and substantial future risk of harm, in the forms set forth above.

---

[21] *See How Data Brokers Profit from the Data We Create*, THE QUANTUM RECORD, https://thequantumrecord.com/blog/data-brokers-profit-from-our-data/ (last visited on May 1, 2026).

[22] *Frequently Asked Questions,* NIELSEN COMPUTER & MOBILE PANEL, https://computermobilepanel.nielsen.com/ui/US/en/faqen.html (last visited on May 1, 2026).

## V. CLASS ACTION ALLEGATIONS

97. Plaintiff brings this action individually and on behalf of all other persons similarly situated, pursuant to Tennessee Rule of Civil Procedure 23.

98. Specifically, Plaintiff proposes the following Class definition (referred to herein as the "Class"), subject to amendment as appropriate:

> **All individuals who had Private Information impacted as a result of the Data Breach.**

99. Excluded from the Class are Defendant and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

100. Plaintiff reserves the right to modify or amend the definitions of the proposed Nationwide Class as well as to add subclasses, before the Court determines whether certification is appropriate.

101. Numerosity. The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, based on information and belief, the Class consists of potentially thousands of current and former employees of TruGreen whose data was compromised in the Data Breach. The identities of Class Members are ascertainable through TruGreen's records, Class Members' records, publication notice, self-identification, and other means.

102. Commonality. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether TruGreen engaged in the conduct alleged herein;

b. When TruGreen learned of the Data Breach;

c. Whether TruGreen's response to the Data Breach was adequate;

d. Whether TruGreen unlawfully lost or disclosed Plaintiff's and Class Members' Private Information;

e. Whether TruGreen failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

f. Whether TruGreen's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

g. Whether TruGreen's data security systems prior to and during the Data Breach were consistent with industry standards;

h. Whether TruGreen owed a duty to Class Members to safeguard their Private Information;

i. Whether TruGreen breached its duty to Class Members to safeguard their Private Information;

j. Whether hackers exfiltrated Class Members' Private Information via the Data Breach;

k. Whether TruGreen had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and the Class Members;

l. Whether TruGreen breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

m. Whether TruGreen knew or should have known that its data security systems and monitoring processes were deficient;

n. What damages Plaintiff and Class Members suffered as a result of TruGreen's misconduct;

o. Whether TruGreen's conduct was grossly negligent;

p. Whether TruGreen was unjustly enriched;

q. Whether Plaintiff and Class Members are entitled to actual and/or statutory damages;

r. Whether Plaintiff and Class Members are entitled to credit or identity monitoring and monetary relief; and

s. Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

103. Typicality. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach.

104. Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff's counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

105. Predominance. A class action is appropriate under Tenn. R. Civ. P. 23.02(3) because common questions of law and fact overwhelmingly predominate over any individualized issues. TruGreen has engaged in a common course of conduct toward Plaintiff and Class Members in that all of Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from TruGreen's conduct affecting Class Members set out above predominate over any individualized issues.

Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

106. Superiority. A Class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for TruGreen. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

107. TruGreen has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

108. Finally, all members of the proposed Class are readily ascertainable. TruGreen has access to the names and addresses and/or email addresses of Class Members affected by the Data Breach.

## VI. CLAIMS FOR RELIEF

### COUNT I
### GROSS NEGLIGENCE AND NEGLIGENCE *PER SE*
### (ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)

109. Plaintiff restates and realleges allegations stated from paragraphs 1-108 as if fully set forth herein.

110. TruGreen knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

111. TruGreen knew or should have known of the risks inherent in collecting the Private Information of Plaintiff and Class Members and the importance of adequate security. TruGreen was on notice because, on information and belief, it knew or should have known that it would be an attractive target for cyberattacks.

112. TruGreen owed a duty of care to Plaintiff and Class Members whose Private Information was entrusted to it. TruGreen's duties included, but were not limited to, the following:

a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

b. To protect current and former employees' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

c. To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in its possession;

d. To employ reasonable security measures and otherwise protect the Private Information of Plaintiff and Class Members pursuant to the FTCA and applicable industry standards;

e. To implement processes to quickly detect a data breach; and

f. To timely act on warnings about data breaches.

113. TruGreen's duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . .

practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

114. TruGreen's duty also arose because Defendant was bound by industry standards to protect its current and former employees' confidential Private Information.

115. Plaintiff and Class Members were foreseeable victims of any inadequate security practices on the part of Defendant, and TruGreen owed them a duty of care not to subject them to an unreasonable risk of harm.

116. Upon information and belief, TruGreen, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Private Information within its possession.

117. Upon information and belief, TruGreen, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiff and Class Members.

118. Upon information and belief, TruGreen breached its duties, and thus was grossly negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b. Failing to adequately monitor the security of its networks and systems and to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of Private Information;

c. Allowing unauthorized access to Class Members' Private Information;

d. Failing to comply with the FTCA and applicable industry standards;

e. Failing to detect in a timely manner that Class Members' Private Information had been compromised; and

f. Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

119. TruGreen had a special relationship with its current and former employees, including Plaintiff and Class Members. Plaintiff's and Class Members' willingness to entrust TruGreen with their Private Information was predicated on the understanding that TruGreen would take adequate security precautions to protect it. Moreover, only TruGreen had the ability to protect its systems (and the Private Information stored thereon) from attack.

120. TruGreen's grossly negligent breach of duties owed to Plaintiff and Class Members, upon information and belief, caused Plaintiff's and Class Members' Private Information to be compromised and exfiltrated, as alleged herein.

121. TruGreen's breaches of duty also caused a substantial, imminent risk to Plaintiff and Class Members of identity theft, loss of control over their Private Information.

122. Upon information and belief, as a result of TruGreen's negligence, including its gross negligence, in breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of criminal third parties, has been and will continue to be used for fraudulent purposes.

123. Defendant's conduct went far beyond ordinary negligence. Defendant acted with gross negligence by consciously and recklessly disregarding known risks to Plaintiff's Private Information, including by failing to implement basic and industry-standard cybersecurity measures, failing to adequately monitor its systems for unauthorized access, failing to remediate known security vulnerabilities, failing to properly train employees on data security, and failing to timely detect and prevent the Data Breach. Defendant knew or should have known that their inadequate data-security practices created a high probability of harm to Plaintiff and the Class, yet Defendant consciously failed to take reasonable steps to prevent that harm.

124. Defendants' grossly negligent conduct demonstrated a substantial lack of concern for whether injury would result to Plaintiff and the Class. Defendant's actions and omissions constituted a reckless indifference to the rights, safety, and interests of Plaintiff and the Class, whose sensitive personal and medical information Defendant was entrusted to protect.

125. Specifically, TruGreen acted with gross negligence by consciously and recklessly ignoring its duty to protect Plaintiff's Private Information, despite the ubiquity of data breaches. Given that Defendant holds vast amounts of Private Information, it was inevitable that unauthorized individuals would attempt to access its databases containing the Private Information—whether by a sophisticated cyberattack or otherwise.

126. Moreover, TruGreen violated Section 5 of the FTCA (and similar state statutes) by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information and by failing to comply with industry standards.

127. TruGreen also had independent duties under state laws that required it to reasonably safeguard Plaintiff's and Class Members' Private Information.

128. As a direct and proximate result of TruGreen's grossly negligent conduct, Plaintiff and Class Members have suffered damages as alleged herein and are at imminent risk of further harm.

129. The injury and harm that Plaintiff and Class Members suffered was reasonably foreseeable.

130. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' PII by disclosing and providing access to PII to third parties and by failing to properly supervise both the way the PII was stored, used and exchanged, and those in its employ who were responsible for making that happen.

131. Given Defendant's failures to implement the proper security systems, as described above, even knowing the ubiquity of the threat of data breaches, Defendant's decision not to invest enough resources in its cyber defenses amounts to gross negligence.

132. Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

133. In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring TruGreen to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

## COUNT II
## BREACH OF IMPLIED CONTRACT
## (ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)

134. Plaintiff restates and realleges allegations stated from the preceding paragraphs 1-108 as if fully set forth herein.

135. TruGreen provided employment to Plaintiff and Class Members.

136. Defendant, as employer, held the Private Information on behalf of Plaintiff and Class Members. Holding Plaintiff and Class Members' Private Information was part of Defendant's regular business practices, as agreed by the parties. When Plaintiff and Class Members joined Defendant's employment, they agreed to have their Private Information stored in Defendant's network.

137. Plaintiff and Class Members entered implied contracts with Defendant in which Defendant agreed to safeguard and protect such Information and to timely detect any breaches of their Private Information. Plaintiff and Class Members were required to share Private Information to obtain employment. In entering such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

138. Plaintiff and Class Members fully performed their obligations under their implied contracts with Defendant.

139. Defendant's implied promises to Plaintiff and Class Members include, but are not limited to, (1) taking steps to ensure that anyone who is granted access to Private Information also protect the confidentiality of that data; (2) taking steps to ensure that the Private Information that is placed in the control of its employees is restricted and limited to achieve an authorized business purpose; (3) restricting access to qualified and trained employees and/or agents; (4) designing and implementing appropriate retention policies to protect the Private Information against criminal data breaches; (5) applying or requiring proper encryption; (6) implementing multifactor authentication for access; and (7) taking other steps to protect against foreseeable data breaches.

140. Upon information and belief, Defendant breached these implied promises it made with Plaintiff and Class Members by failing to safeguard and protect their Private Information and by failing to notify Plaintiff and Class Members thereof within a reasonable time.

141. Plaintiff and Class Members would not have entrusted their Private Information to TruGreen in the absence of such an implied contract.

142. Had TruGreen disclosed to Plaintiff and the Class that it did not have adequate computer systems and security practices in place to secure such sensitive data, Plaintiff and Class Members would not have provided their Private Information to TruGreen.

143. TruGreen recognized that Plaintiff's and Class Member's Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain with Plaintiff and the other Class Members.

144. Upon information and belief, TruGreen violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiff's and Class Members' Private Information.

145. Plaintiff and Class Members have been damaged by TruGreen's conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

146. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *inter alia*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide free lifetime credit monitoring to all Class Members.

**COUNT III**
**UNJUST ENRICHMENT**
**(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)**

147. Plaintiff restates and realleges allegations stated from the preceding paragraphs 1-110 as if fully set forth herein.

148. This Count is pleaded in the alternative to Count II above.

149. Plaintiff and Class Members conferred a benefit on Defendant. Specifically, they provided Defendant with their Private Information, which Private Information has inherent value. In exchange, Plaintiff and Class Members should have been entitled to have Defendant protect their Private Information with adequate data security, especially in light of their employer-employee relationship.

150. Defendant knew that Plaintiff and Class Members conferred a benefit upon it and has accepted and retained that benefit by accepting and retaining the Private Information entrusted to it. Defendant profited from Plaintiff's retained data and used Plaintiff and Class Members' Private Information for business purposes.

151. Upon information and belief, Defendant failed to secure Plaintiff's and Class Members' Private Information and, therefore, did not fully compensate Plaintiff or Class Members for the value that their Private Information provided.

152. Defendant acquired the Private Information through inequitable record retention as it failed to disclose the inadequate security practices previously alleged.

153. If Plaintiff and Class Members had known that Defendant would not use adequate data security practices, procedures, and protocols to secure their Private Information, they would have made alternative employment choices that excluded Defendant.

154. Plaintiff and Class Members have no adequate remedy at law.

155. Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon it.

156. Upon information and belief, as a direct and proximate result of TruGreen's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) the imminent and substantial risk of actual identity theft; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to future efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in TruGreen's possession and is subject to further unauthorized disclosures so long as TruGreen fails to undertake appropriate and adequate measures to protect Private Information in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

157. Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from TruGreen and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by TruGreen from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

158. Plaintiff and Class Members may not have an adequate remedy at law against TruGreen, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## COUNT IV
## INVASION OF PRIVACY—INTRUSION UPON SECLUSION AND PUBLIC DISCLOSURE OF PRIVATE FACTS
## (ON BEHALF OF PLAINTIFFS AND THE CLASS)

159. Plaintiff re-alleges and incorporates by reference all preceding allegations, as if fully set forth herein.

160. Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential Private Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

161. Defendant owed a duty to Plaintiff and the Class to keep this information confidential.

162. The unauthorized acquisition (i.e., theft) by a third party of Plaintiff's and Class Members' Private Information is highly offensive to a reasonable person.

163. The intrusion – the Data Breach - was into a place or thing which was private and entitled to be private. Plaintiff and the Class (or their third-party agents) disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

164. Defendant's conduct also represents a public disclosure of private facts in that the disclosure was made to cybercriminals—individuals in a special relationship with Plaintiff and the

proposed Class in that they are the exact group from whom the expected cybersecurity measures are intended to protect Plaintiffs and the proposed Class.

165. The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

166. Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

167. Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

168. By intentionally failing to keep Plaintiff's and Class Members' Private Information safe, and by intentionally misusing and/or disclosing said information to unauthorized parties for unauthorized use, Defendant intentionally invaded Plaintiff's and Class Members' privacy by:

a. Intentionally and substantially intruding into Plaintiff's and Class Members' private affairs in a manner that identifies Plaintiff and Class Members and that would be highly offensive and objectionable to an ordinary person;

b. Intentionally publicizing private facts about Plaintiff and Class Members, which is highly offensive and objectionable to an ordinary person; and

c. Intentionally causing anguish or suffering to Plaintiff and Class Members.

169. As the Restatement explains, as used throughout the Restatement of Torts, intent "has reference to the consequences of an act rather than the act itself." Restatement (Second) of Torts § 8A, cmt. A (1964). "Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from her act,

and still goes ahead, she is treated by the law as if she had in fact desired to produce the result." *Id.* cmt. B.

170. Indeed, given the foreseeability of the harms inherent in data breaches and the ubiquitous nature of data breaches, Defendant was substantially certain that its failure to implement reasonable cybersecurity standards would lead to an invasion of Plaintiff's privacy.

171. Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiffs and the Class.

172. As a proximate result of Defendant's acts and omissions, the private and sensitive Private Information of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

173. And, on information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

174. Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their Private Information is still maintained by Defendant with their inadequate cybersecurity system and policies.

175. Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the Private Information of Plaintiffs and the Class.

176. In addition to injunctive relief, Plaintiff, on behalf of themselves and the other Class members, also seeks compensatory damages for Defendant's invasion of privacy, which includes

the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs

**COUNT V**
**DECLARATORY AND INJUNCTIVE RELIEF (TENN. CODE ANN. § 29-14-102; TENN. R. CIV. P. 65)**
**(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)**

177. Plaintiff restates and realleges allegations stated from the preceding paragraphs 1-108 as if fully set forth herein.

178. Pursuant to Tenn. Code Ann. § 29-14-102, Plaintiff seeks a declaration of the parties' rights and legal relations arising from the Data Breach, including a declaration that Defendant failed to implement reasonable and adequate data-security safeguards. Plaintiff further seek appropriate injunctive relief under Tenn. R. Civ. P. 65 requiring Defendant to implement and maintain enhanced data-security measures sufficient to protect Plaintiff's and Class Members' Private Information going forward.

179. A justiciable controversy exists, and Plaintiff and Class Members are entitled to a judicial determination as to whether Defendant has performed and is adhering to all data privacy obligations as required by law or otherwise to protect the Plaintiff's and Class Members' Private Information from unauthorized access, disclosure, and use.

180. A judicial determination of the rights, status, and responsibilities of the parties regarding Defendant's privacy policy and whether it failed to adequately protect the Private Information is necessary and appropriate to determine with certainty the rights of Plaintiff and the Class, and so that there is clarity between the parties as to Defendant's data security obligations with respect to Private Information going forward, in view of the ongoing relationships between the parties.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class described above, seeks the following relief:

a. An order certifying this action as a Class action, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

b. Judgment in favor of Plaintiff and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d. An order instructing TruGreen to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members;

e. An order requiring TruGreen to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f. A judgment in favor of Plaintiff and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g. An award of such other and further relief as this Court may deem just and proper.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.

Dated: May 1, 2026

Respectfully submitted,

*/s/ Grayson Wells*
J. Gerard Stranch, IV (BPR # 023045)
Grayson Wells (BPR # 039658)

Sam Douthit (BPR # 043065)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com
sdouthit@stranchlaw.com

Tyler J. Bean*
**SIRI & GLIMSTAD LLP**
101 Park Ave.
Suite 1300, #16982799
Oklahoma City, OK 73102
Tel: (212) 532-1091
E: tbean@sirillp.com

Neil P. Williams*
**SIRI & GLIMSTAD LLP**
1901 Main Street
18th Floor #3037
Columbia, South Carolina 29201
E: nwilliams@sirillp.com

***Pro hac vice forthcoming**

***Attorneys for Plaintiff and the Putative Class***

# Certificate of Electronic Notification

## Recipients

**PART 2** - Notification received on 2026-05-15 15:43:58.07.

**GRAYSON WELLS** - Notification received on 2026-05-15 15:43:58.679.

## ***** IMPORTANT NOTICE - READ THIS INFORMATION *****

## NOTICE OF ELECTRONIC FILING [NEF]

**A filing has been submitted to the court RE:** CH-26-0641

**Judge:**

Judge JAMES R NEWSOM - Division 30DJ

| | |
|---|---|
| **Official File Stamp:** | 05-15-2026:15:21:43 |
| **Notification Date:** | 05-15-2026:15:43:56 |
| **Court:** | CHANCERY COURT |
| **Case Title:** | PATTI DELVALLE V TRUGREEN LIMITED PARTNERSHIP |
| **Document(s) Submitted:** | Service Return - PPS/OTHER Return on Service of Summons, trugreen, 05/15/26, via cert mail |
| **Filed By:** | Grayson Wells |

You may review this filing by clicking on the following link to take you to your cases.

This notice was automatically generated by the courts auto-notification system.

**The following people were notified electronically:**

PART 2

GRAYSON WELLS for PATTI DELVALLE

**The following people have NOT been notified electronically by the Court:**

TRUGREEN LIMITED PARTNERSHIP

**Address:**

TRUGREEN LIMITED PARTNERSHIP

1790 KIRBY PARKWAY

SUITE 300

MEMPHIS, TN 38138

JAMES R NEWSOM

**Address:** JAMES R NEWSOM
140 Adams
Memphis, TN 38103

ELECTRONICALLY FILED
2026 Mar 15 3:21 PM
CLERK OF COURT - CHANCERY
ELECTRONICALLY FILED
2026 May 05 10:38 AM
CLERK OF COURT - CHANCERY

| STATE OF TENNESSEE<br>30th JUDICIAL DISTRICT<br>CHANCERY COURT | **SUMMONS**** | DOCKET NUMBER<br>CH-________ |
|---|---|---|

| Plaintiff | Defendant |
|---|---|
| Patti DelVille | TruGreen Limited Partnership d/b/a TruGreen |

TO: (NAME AND ADDRESS OF DEFENDANT)

TruGreen Limited Partnership
SERVE: Registered Agent
CT Corporation System
300 Montvue Road
Knoxville, TN 37919

Method of Service:

- ☐ Shelby County Sheriff
- ☐ Private Process Server
- ☐ Out of County Sheriff*
- ☐ Secretary of State*
- ☐ Comm. Of Insurance*
- ☑ Certified Mail
- ☐ Other

*Attach Required Fees

You are summoned to defend a civil action filed against you in the Chancery Court of Shelby County, Tennessee. Your defense to this action must be made within thirty (30) days from the date this summons is served upon you. You must file your defense with the Clerk of the Court and send a copy to the Plaintiff/Plaintiff's attorney at the address listed below. If you fail to defend this action within thirty (30) days of service, judgment by default may be rendered against you for the relief sought in the complaint. Questions regarding this summons and the attached documents should be addressed to the Attorney/Plaintiff listed below.

| Attorney for Plaintiff or Plaintiff if filing Pro Se:<br>(Name, address & telephone number) | ISSUED________of________________, 20______ |
|---|---|
| Grayson Wells<br>STRANCH, JENNINGS & GARVEY, PLLC<br>223 Rosa L. Parks, Ave., Ste 200<br>Nashville, TN 37203 Tel: (615) 254-8801 | W. Aaron Hall, Clerk and Master<br><br>By: ______________________<br>Deputy Clerk & Master<br>140 Adams, Room 308 Memphis, TN 38103 |
| TO THE SHERIFF:<br>______________________<br>______________________ | Came to hand<br>______day of________________, 20______<br><br>Sheriff |

**CERTIFICATION (IF APPLICABLE)**

| I, W. Aaron Hall, Clerk & Master of the Chancery Court in the State of Tennessee, Shelby County, do certify this to be a true and correct copy of the original summons issued in this case. | **W. Aaron Hall, Clerk & Master**<br>By: ______________________<br>D. C. & M. |
|---|---|

**Submit one original and one copy for each defendant to be served.

For Americans with Disabilities Act (ADA) assistance **only**, please call Shelby County ADA Coordinator at (901) 222-2334.
For questions regarding scheduling or filing, please contact Chancery Court at (901) 222-3900.

**Notice of Personal Property Exemption:**

TO THE DEFENDANT(S):

Tennessee law provides a ten thousand dollar ($10,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state docket number on list.

**The Shelby County, Tennessee Chancery Court**

**Case Style:** PATTI DELVALLE V TRUGREEN LIMITED PARTNERSHIP

**Case Number:** CH-26-0641

**Type:** Process issued other (T)

SAMUEL GINSBERG, DC

Electronically signed on 05/05/2026 10:49:22 AM

## RETURN OF SERVICE OF SUMMONS

I hereby certify that I **HAVE** served the within summons:

By delivering on the__________day of______________________________, 20______at__________________am/pm a copy of the summons and a copy of the Complaint to the following Defendant ______________________________________

at ______________________________________________________________

_______________________________ Signature of person accepting service

By: ______________________________ Sheriff or other authorized person to serve process

## RETURN OF NON-SERVICE OF SUMMONS

I hereby certify that I **HAVE NOT** served the within summons:

To the named defendant______________________________because ______________________

is (are) not to be found in this county after diligent search and inquiry for the following reason(s):______________________.

This______day of______________________, 20 _________

By: Sheriff or other authorized person to serve process

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the 5th day of May, 20 26, I sent, postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case CH-26-0641 to the defendant TruGreen Limited Partnership. On the 15th day of May, 20 26, I received the return receipt, which had been signed by Registered Agent CT Corporation System on the 11 day of May, 20 26. The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

**Sworn to and subscribed before me on this** 15th **day of** May, **20** 26.

Signature of ✓ Notary Public or_____ Deputy Court Clerk:

[signature]

My Commission Expires: 1-2-2029

Signature of Plaintiff, Plaintiff's attorney or other person authorized by statute to serve process.

Jacob R. Hall - paralegal

ATTACH RETURN

RECEIPT HERE

(IF APPLICABLE)

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

TruGreen Limited Partnership
Registered Agent: CT Corporation System
300 Montvue Road
Knoxville, TN 37919

9590 9402 9410 5002 7282 91

2. Article Number *(Transfer from service label)*

9589 0710 5270 4048 1518 06

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X

☐ Agent
☐ Addressee

B. Received by *(Printed Name)* Samantha Sokton

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

MAY 11 2026

3. Service Type

☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 Domestic Return Receipt

**Tracking Number:**

# 9589071052704048151806

Copy    Add to Informed Delivery

## Latest Update

Your item was delivered to an individual at the address at 9:58 am on May 11, 2026 in KNOXVILLE, TN 37919.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

## Delivered

**Delivered, Left with Individual**

KNOXVILLE, TN 37919
May 11, 2026, 9:58 am

See All Tracking History

What Do USPS Tracking Statuses Mean?